Good morning. May it please the Court, David Firmino, on behalf of Petitioner-Appellant Eduardo Linares. With me at Council table is my colleague Darlene Bagley, who will not be arguing this morning. I want to reserve two minutes for rebuttal. Mr. Linares is entitled to relief on several bases. I want to focus my limited time this morning on one of those, and that is the trial court's failure to identify and instruct the jury on elements of any target offense upon which the jury could premise its application of the natural and probable consequences doctrine. This error so infected the entire trial under Estelle that the entire resulting trial violated Mr. Linares' right to due process. Relief here is warranted even as we are mindful of Judge Kaczynski's recent admonition in dissent in the Mann case that this Court as of late has treated AEDPA as a straight tracket to be escaped rather than a law to be obeyed.  In my perspective, but agreed to, even obeying AEDPA's exacting standards, construing every ambiguity in favor of the State court, Mr. Linares should prevail. Let's take a look at the facts first, briefly, so that we can see why the instruction here was constitutionally infirm. Mr. Linares had accompanied a high school friend, Ricardo, to a drug transaction. When the parties entered the convenience store to conduct the transaction, from all accounts, distrust was readily apparent. Almost immediately, the victim, Mr. Reynaga, called it off. A scuffle occurred near the door. Mr. Linares fled. By the way, all of this is uncontroverted. It comes largely from a statement or a recorded statement that Mr. Linares made to one of the officials, which was transcribed and read to the jury. Eyewitnesses describe two men struggling on the ground outside of the store that Mr. Linares entered with the friend. A gunshot is fired. Eyewitnesses describe two men getting into an SUV and leaving. No witnesses describe Mr. Linares as the shooter. So it's within this context that this instruction, that the problem with this instruction becomes relevant. The court instructed the jury on the natural and probable consequences doctrine, but the only targeted offense identified was robbery. The doctrine was also argued to the jury in closing. The prosecutor specifically discussed the natural and probable consequences doctrine related to brandishing a firearm and robbery, not to a drug transaction. We know that the jury didn't rely on robbery as a target offense for application of the doctrine because they acquitted Mr. Linares of felony murder with the predicate offense being robbery. What the court failed to do here was properly identify and describe the other possible target offenses for application of the doctrine. The problem here is, as argued in our brief, not all of the possible target offenses have murder as a natural and probable consequence. Do we have to agree on the target offense unanimously and by unreasonable doubt? Some jurors could believe it's one target offense, some jurors could believe it's another target offense, right? That's correct. It's not an element of the crime. So they could acquit of robbery and yet still find that there is a target offense, even though they don't all agree which one it is. Some of them may think it's... And I think that the record shows that they had, I mean, given the amount of time that they deliberated and the questions that they asked in the first place... I'm just trying to figure out what we can infer from the acquittal. What we can infer from the acquittal on the felony murder? Right. I think that the jury struggled with the definition, with the instruction. I think that's what we can infer. They didn't have proper guidance and that's precisely the infirmity here. That's precisely the problem. I'm not sure I'm... Well, you wanted to say they acquitted on the... They did not... They must not have used the robbery as a predicate offense, right? Correct. And I'm trying to... And you infer that from the fact they didn't convict him of felony murder. Correct. And I'm just wondering whether that follows. Well, it could have been... I think it does. I think the problem is that they... I'm struggling with your question. Well, they don't convict him of felony murder. What can we infer from that? Does that mean they sort of are convinced beyond a reasonable doubt that no robbery occurred? Does that tell us that? I think that's precisely my point, yes. But I'm not sure... Maybe they just couldn't agree that there was... They couldn't agree that there was a felony, so they... They don't convict him of felony murder. Why does that tell us that they, in fact, couldn't... Some of them could not have believed there was, in fact, a robbery? I mean, you threw it out. You suggested that the failure to convict on felony murders was dispositive. And I'm just trying to understand whether that's the case. I know... I hear what the Court is asking, and I'm just... I'm not sure... We'll have to puzzle it out. Yes, I'm not sure of the answer, and I... Okay, fair enough. But I take it, counsel, your point is that it could not have... Therefore, the jury must have thought it was this drug transaction which led to the death of this individual. That's correct. So my question for you on that is, what's wrong with the California appellate court's decision here saying that being involved in a drug-crafting offense like this one, with a weapon and the guy being an informant, what's under AEDPA standard, the straitjacket, or whatever you want to call the Houdini device that it is, what is the problem with the California court's decision there? Because that's not what was argued to the jury. That's not what the prosecutor argued to the jury. It's not what the court instructed the jury on. And so the problem is it's not okay for a court of appeal to essentially Monday morning quarterback what the trial court did. They didn't... The court of appeal, in fact, if you... The court of appeal says the prosecutor's argument regarding appellant's responsibility for the act of pointing a gun as an aider and abetter was transitory, and the record shows that the jury members did not remember it since they asked for a readback of the argument. The court's focus... The court essentially just invents what happened at trial. It's not what happened. This is not how they were instructed. They were instructed that robbery was the target offense, and they were left with that instruction, specifically what the court said. It's what counsel argued in her closing argument. And that's the problem. And I'm not... But they were given 8.31 and 8.11 Caljet, correct? That's correct. And that goes to the malice issue. Understood. But it was a... You're not arguing that the 8.11 was incorrectly given. I know you... No. It's concerning as to when it was given. Right. But if the jury followed 8.11 under the Dellinger factors or Dellinger elements, where's the AEDPA error there? Proper instruction, evidence, we could say maybe it's there. So on that issue, where's the AEDPA error? I think the... I see the Court's inquiry here. I think that the problem is that the, under the prevailing State court law, the fact that they gave the second instruction cured the problem. Is that the... Right, because I mean, a proper, and I don't want to cut in too much of your time if you want to think about it and save it for rebuttal. I see that my time is running out. But I feel that I have failed to answer your question. So I'm... We'll give you a little time for rebuttal. Yeah. So I will reserve my time. Okay. Thank you. Very good. We'll hear from the government. Good morning, Your Honors. Deputy Attorney General Thi Dang Nguyen for Respondent Appellee. Appellant's claim regarding the second issue is premised on confusion between two very distinct theories of liability. One being, under California law, the natural and probable consequences doctrine. The other, here in this case, liability on defendant's guilt was premised on second-degree murder based on a finding of implied malice. And to answer the court's question to appellant, yes, the jury could acquit appellant of felony murder with the target offense being robbery and still convict him of second-degree murder if it finds implied malice. Here, because there was sufficient evidence for a jury to reasonably conclude that he committed an intentional act, the natural consequences of which were dangerous to human life, the jury could still convict him. And once the jury acquitted appellant of first-degree felony murder or robbery murder, the natural and probable consequences doctrine was no longer relevant to that consideration because the jury was properly instructed on the elements of second-degree implied malice murder pursuant to 8.11 and 8.31, the different roles by the different actors involved in the case, and malice. The facts in this case show that appellant engaged in, he participated, he was not just accompanying Ricardo, but he participated in a drug deal involving two kilograms of cocaine and $28,000 in cash with an armed purchaser and possibly several other armed individuals. That was dangerous to human life. And no target offense was required where the jury had already acquitted him of the robbery murder and the jury was properly instructed regarding all the elements of second-degree murder based on an implied malice theory. In conclusion, unless the court has additional questions regarding any of the other claims, respondent would respectfully ask this court to affirm the district court's denial of relief. Thank you. Thank you. We'll give you a couple minutes for rebuttal if you wish to take it. Judge Owen, I think the answer to your question about the clearly established federal law that was violated is Estelle v. McGuire. And I think that... Estelle cuts out of the way, right? I remember Estelle well. I dissented Estelle. Yes. I seem to be focused on your dissents this morning. I'm not sure that that... What Estelle stands for is another very helpful proposition to you. What it says is we can't reverse for errors of state law. Yeah. So what the state court does on state law issues is final, as far as we're concerned. You have to find a federal... And I think the federal rule here is the case we cited is Bolenbach. I think that we have a court substituting its judgment for... The court of appeal here is substituting its judgment for that of the trial court. And that is the reasoning... Well, courts of appeal substitute their judgment for that of trial courts all the time. It's also a favorite pastime. That's not a due process violation. That's called appellate review. I mean, some courts are more aggressive about that kind of thing than other things. I misspoke. It's not substituting its judgment. It's the fact that it substituted... It invented a record, essentially, here. The court... It's not what was argued to the jury, and it's not the instruction that was given to the jury. And the court comes up with a completely different... You're saying that your argument is that they rewrote history, in a sense. That's our position, yes. But I want to sum up by... And what's wrong with that? What's the constitutional, federal constitutional claim there? It's a violation of due process for the court to substitute what was the record, what was actually argued to the jury, what the prosecutor... I don't mean to be at all flippant about it, but you are in EDPA land, which is the vast territory where we can't make up new rules. So what I hear you saying is there is a federal constitutional right to appellate review that does not distort the trial court record. And I am just wondering where that is in the case law and... Under this court's... What the limits of that kind of right would be. Well, under this court's analysis in the Dixon case, I think that once we establish constitutional error, there is, under either the EDPA standard or BREC, which I understand right now is before the Supreme Court has granted cert on that question. Under the BREC standard, under either standard, I think we prevail. I'm not sure that addresses... Well, you have to have a right first. And the right is... You have to have a right. What is the right? The right is a due process right. I mean, that's the right that Dixon identifies with instructional error, and I think that's the issue here. I know we're over time, and I apologize for asking this at the end, but I'm trying to understand your argument sympathetically. It appears to me to be that the court of appeal made a federal constitutional error in affirming based on an argument that was never made below. That's correct. I have trouble finding a Supreme Court case that clearly states that as a federal constitutional violation. When we have... And in this case, we've got an instruction, whatever, 8.31, that says an act that's unreasonably dangerous can support second-degree murder conviction without mentioning in the instruction robbery. And so as I look at it, the California Court of Appeal looks at that instruction that was given and says that the evidence would support a guilty verdict based upon that instruction. So what Supreme Court case, United States Supreme Court case, do we have that says that the state court cannot affirm based on an argument not made when we've got a jury instruction like that? Judge Fletcher, I think it's Bolenbach. I think that's the case. I think that's the precedent, and I think that that's the issue here. It identifies a case, a problem where a jury is not properly instructed, where they are... I'm not sure I'm... That's the case we cited in our brief, and I think that that's the U.S. Supreme Court law, that's the clearly established law that's violated here. Okay. Thank you. Thank you, counsel. The case is just argued. We'll stand submitted. We'll next...
judges: Kozinski, Fletcher, Owens